UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG M. NGUYEN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CACHE CREEK CASINO RESORT,<br><br>　　　　　Defendant. | No. 2:20-cv-1748-TLN-KJN PS<br><br>FINDINGS AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 24, 29.) |

Plaintiff Hung M. Nguyen, proceeding pro se after paying the filing fee through installments, asserts various federal- and state-law claims against defendant Cache Creek Casino Resort concerning Nguyen's detention on the Casino's premises. (ECF No. 1.) On November 24, 2020, Cache Creek entered a special appearance in order to contest the court's subject matter jurisdiction.[1] (ECF No. 12.) Cache Creek argues that as an enterprise wholly owned by a sovereign tribal entity, the court has no power to rule on Nguyen's claims. Nguyen opposed dismissal, contending among other things that jurisdiction exists from the federal statutes pleaded. (ECF No. 25.) Cache Creek replied (ECF No. 28), and the court took the matter under submission (ECF No. 27). The undersigned recommends Nguyen's motion for sanctions be DENIED, Cache Creek's motion to dismiss be GRANTED, and this case be CLOSED.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(21) for the entry of findings and recommendations. See Local Rule 304.

1

Background[2]

Plaintiff Nguyen is a recipient of SSI disability. (ECF No. 1.) Defendant Cache Creek Casino Resort is an enterprise controlled by the Yocha Dehe Wintun Nation, (the "Tribe") which entered a tribal-state compact with California (as approved by the Secretary of the Interior). (Id.; ECF No. 24-4). On June 29, 2020, Cache Creek's security team detained Nguyen at the Cache Creek Casino because the casino had previously determined Nguyen was not permitted to reenter. (ECF No. 1.) The team handcuffed Nguyen and called for the Yolo Sheriff's Office to eject Nguyen from the premises. (Id.) Nguyen was charged by the county with trespass, but these charges were dropped. (Id.)

In October 2019, Nguyen filed an administrative tort claim with the Tribe, as prescribed by the tribal-state compact and the Tribe's Tort Ordinance. (ECF No 24-3 at 5-6; 24-4 at 141-47.) A "risk compliance officer" reviewed and rejected Nguyen's claim and advised him of his right to appeal, as per the Tort Ordinance. (ECF No. 24-3 at 7-8.)

In March 2020, Nguyen filed a case against Cache Creek in California Superior Court, Solano County, for "Gross Negligence, Intentional Infliction of Emotional Distress, and False Imprisonment." (ECF No. 24-5 at 13-17.) This case was dismissed on jurisdictional grounds on July 24, 2020. (See Nguyen v Cache Creek Casino Resort, Case No. FCS-054458.)

On August 31, 2020, Nguyen filed the instant action, alleging discrimination claims under 42 U.S.C. § 12101 and 42 U.S.C. § 2000a, as well as various claims under California state law (including claims asserted in the Solano County case). (ECF No. 1.) Nguyen prayed for $60 million in damages as well as unnamed criminal remedies. (Id.) Cache Creek entered a special appearance to contest the court's subject matter jurisdiction. (ECF No. 24.)

---

[2] The background facts derive from the second amended complaint (ECF No. 12), as well as certain exhibits submitted by the parties which are subject to judicial notice. See Fed. R. Evid. 201; United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may [] consider certain material-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."); see also Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (judicial notice proper for exhibits "on which the [c]omplaint necessarily relies."). Facts are construed in a light most favorable to plaintiff—the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013).

2

Legal Standard

Rule 8(a)[3] calls for a complaint to contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" Under Rule 12(b), a responding party may present certain defenses to a complaint by motion. This includes challenges under Rule 12(b)(1) concerning the court's subject matter jurisdiction, where a defendant may argue that the federal courts have no power to hear the plaintiff's claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Jurisdiction is [the] power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")

A federal district court generally has original jurisdiction over a civil action when: (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). However, there are other issues that can affect a court's subject matter jurisdiction, including, as here, matters of tribal sovereign immunity. Pistor v. Garcia, 791 F.3d 1104, 1115 (9th Cir. 2015) ("Tribal sovereign immunity is a quasi-jurisdictional issue that, if invoked at the Rule 12(b)(1) stage, must be addressed and decided."). When resolving a factual attack on subject matter jurisdiction, the court may look beyond the face of the complaint to relevant extrinsic evidence. Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987) ("A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits. In such circumstances, no presumption of truthfulness attaches to the plaintiff's allegations.") (citations omitted). Plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction to hear an action. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3).

---

[3] Citations to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

Pro se pleadings are to be liberally construed. Hebbe v. Pliler, 627 F.3d 338, 342 fn.7 (9th Cir. 2010) (liberal construction appropriate even post–Iqbal). Prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and give the plaintiff an opportunity to cure them—if it appears at all possible the defects can be corrected. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, if amendment would be futile, leave to amend need not be given. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Analysis

Nguyen raises claims under 42 U.S.C. §§ 12101 and 2000a, which allow for federal question jurisdiction under 28 U.S.C. § 1331. However, Cache Creek argues that the court lacks subject-matter jurisdiction to hear these claims because of the Tribe's sovereign immunity.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) (quoting United States v. U.S. Fid. & Guar. Co., 309 U.S. 506, 512 (1940) ("[W]ithout congressional authorization,' the 'Indian Nations are exempt from suit.")). The Supreme Court has "time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional authorization (or a waiver)." Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 789 (2014). An inquiry into whether a tribal enterprise can be sued in federal court involves examining whether (A) the enterprise "functions as an arm of the tribe," and (B) the tribe has waived its immunity. See Allen v. Gold Country Casino, 464 F.3d 1044, 1046 (9th Cir. 2006) ("This immunity extends to business activities of the tribe, not merely to governmental activities.").

**A. Cache Creek Casino is an "arm" of the Tribe.**

Courts in the Ninth Circuit are to consider five factors when "determining whether an entity is entitled to sovereign immunity as an arm of the tribe":

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.

White v. Univ. of Cal., 765 F.3d 1010, 1025 (9th Cir. 2014).

4

Application of these factors indicates that Cache Creek Casino is an arm of the Yocha Dehe Wintun Nation. Cache Creek Casino is wholly owned and operated by the Tribe, which formed the casino as a "tribal business . . . to generate revenues for its government." (ECF No. 24-4 at ¶ 2.) The Tribe is governed by a tribal council, which "possesses managerial oversight over the Casino" as a Class III gaming facility under the Indian Gaming Regulatory Act ("IGRA," 25 U.S.C. §§ 2701-2721). (Id.) The tribal-state compact contains multiple references to the Tribe's limited waiver of sovereign immunity in a few discrete circumstances, and generally notes the Tribe's intent to share its immunity with Cache Creek. (See, generally, Id. at Ex. A, "Tribal-State Compact between the State of California and the Yocha Dehe Wintun Nation.") Revenues generated by Cache Creek are for the benefit of the Tribe, "to improve the governance, environment, education, health, safety, and general welfare of its citizens, and to promote strong tribal government, self-sufficiency, and provide essential government services to its citizens[.]" (Id. at 13.) Nguyen does not appear to contest that Cache Creek is an arm of the Tribe (see ECF No. 1 at ¶ 3), and in any case has not proffered any argument to dispute Cache Creek's numerous submissions supporting its argument. Kokkonen, 511 U.S. at 377 (reminding that it is Nguyen's burden to demonstrate the court has subject matter jurisdiction to hear an action). The court finds the above factors weigh in favor of a finding that Cache Creek is an arm of the Yocha Dehe Wintun Nation. See White, 765 F.3d at 1018, 1025 (finding that a tribal repatriation committee functioned as an "arm of the tribe" where it was formed "by tribal resolutions from each of its twelve . . . member tribes," for tribal purposes, under the control of the tribes, funded by the tribes, with the intent of sharing tribal sovereign immunity with the committee); see also Cook v. AVI Casino Enters., Inc., 548 F.3d 718, 726 (purpose), 729 (revenue) (9th Cir. 2008) (finding that a tribal casino functioned as an "arm of the tribe" because it was created by a tribal ordinance and tribal-state agreement, wholly owned and managed by the tribe, and the casino submitted its funds to the tribe's treasury); Allen, 464 F.3d at 1047 (finding that a tribal casino functioned as an "arm of the tribe" in part because it was owned and operated by the tribe).

///

**B. The Tribe has not waived sovereign immunity in this instance.**

A tribe can waive its sovereign immunity if "unequivocally expressed." Santa Clara Pueblo, 436 U.S. at 58-59 (quoting United States v. Testan, 424 U.S. 392, 399 (1976)) ("A waiver of sovereign immunity cannot be implied but must be unequivocally expressed."). Without an unequivocal waiver of sovereign immunity from a tribe or an authorization from Congress, federal courts lack the requisite subject-matter jurisdiction to rule on matters involving tribes. Santa Clara Pueblo, 436 U.S. at 58-59; see also Bay Mills, 572 U.S. at 782-83 ("[U]nless Congress has unequivocally authorized Michigan's suit, it must be dismissed.").

Here, the Tribe's intent regarding any waiver of its sovereign immunity is clear, as shown in the tribal-state compact (ECF No. 24-4 at Ex. A) and in its adoption of its Tort Claims Ordinance (Id. at Ex. B.)  Simply, the Tribe's express waiver regarding tort claims applies only to its administrative process, where a three-member commission would review any such claims, and where a claimant could appeal to a JAMS arbitrator if dissatisfied.  (Id. at ¶¶ 4-5.)  In other words, the Tort Claims Ordinance provided Nguyen with the exclusive remedy for the claims asserted in this suit,[4] and Nguyen has submitted no evidence that the Tribe has "unequivocally expressed" an intent to waive its immunity to suit in a federal court.  Kokkonen, 511 U.S. at 377 (reminding that it is plaintiff's burden to demonstrate the court has subject matter jurisdiction to hear an action).  Instead, Nguyen argues that the provisions of, for example, 42 U.S.C. Section 12101 demonstrate a congressional override of this immunity.  (See ECF No. 25.)  However, as multiple courts have noted, the provisions of the ADA under which Nguyen sues do not suffice as evidence of a congressional waiver.  See, e.g., Fla. Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla., 166 F.3d 1126, 1132 (11th Cir. 1999) ("Neither the enforcement provision of Title III of the ADA nor the parallel section of the Civil Rights Act specifically authorizes suits against Indian tribes who allegedly have violated the Acts' substantive requirements."); see also Drake v. Salt River Pima-Maricopa Indian Cmty., 411 F. Supp. 3d 513, 520 (D. Ariz. 2019) (congressional abrogation of state's immunity under the Americans with Disabilities Act did not

---

[4] Nguyen is aware of this, as he submitted a letter to the Casino regarding this incident and was informed of his right to appeal to the Tribe. (See ECF No. 24-3 at 5-8; 24-4 at 141-47.)

1  extend to tribal immunity).  Therefore, the Tribe's immunity remains intact, the court lacks

2  subject-matter jurisdiction, and Nguyen's claims must be dismissed.  <u>Bay Mills Indian Cmty.</u>,

3  572 U.S. at 789.  Because nothing can cure this defect, no amendment should be permitted.

4  <u>Cahill</u>, 80 F.3d at 339.

5        **C.  Nguyen's motion for sanctions should be denied.**

6        Nguyen also moved to sanction the Tribe for repeatedly pressing its jurisdictional

7  arguments.  (ECF No. 29.)  Setting aside that Nguyen failed to set the motion for a hearing "not

8  less than twenty-eight days after service and filing," (Local Rule 230(c)), the court recommends

9  denial of sanctions for the simple reason that the Tribe's jurisdictional arguments are well taken.

10                      **RECOMMENDATIONS**

11        Accordingly, it is HEREBY RECOMMENDED that:

12        1.  Plaintiff's motion for sanctions (ECF No. 29) be DENIED;

13        2.  Defendant's motion to dismiss (ECF No. 24) be GRANTED;

14        3.  Plaintiff's complaint (ECF No. 1) be DISMISSED WITH PREJUDICE for lack of

15           subject matter jurisdiction; and

16        4.  The Clerk of the Court be directed to CLOSE this case.

17  These findings and recommendations are submitted to the United States District Judge assigned to

18  the case.  28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings

19  and recommendations, any party may file written objections with the court and serve a copy on all

20  parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

21  Recommendations."  Any reply to the objections shall be served on all parties and filed with the

22  court within seven (7) days after service of the objections.  Failure to file objections within the

23  specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158

24  F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

25  Dated: January 4, 2021

26

27  nguy.1748

                                          KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE

28